UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK WAYNE SOLOMON, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF SOUTH LAKE TAHOE; CITY OF SOUTH LAKE TAHOE POLICE DEPARTMENT; OFFICER J. HERMINGHAUS, individually and in his official capacity; COUNTY OF EL DORADO SHERIFF'S DEPARTMENT; OFFICER BRANDON PINA, individually and in his official capacity; and DOES 1-10, inclusive,<br><br>            Defendants. | No.  2:13-cv-00115-GEB-CKD<br><br>**ORDER GRANTING DEFENDANTS CITY OF SOUTH LAKE TAHOE'S AND CITY OF SOUTH LAKE TAHOE POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT JAKE HERMINGHAUS'S MOTION FOR SUMMARY JUDGMENT** |

Defendants City of South Lake Tahoe, the City of South Lake Tahoe Police Department (the "City") and Officer Jake Herminghaus ("Herminghaus") (collectively the "Defendants") move for summary judgment, or in the alternative, for summary adjudication of the issues, under Federal Rule of Civil Procedure ("Rule") 56(c). (Mot. Summary Judgment ("Mot."), ECF No. 43.)

Plaintiff's Complaint is comprised of the following federal claims: (1) use of excessive force; (2) false arrest; (3) malicious prosecution; (4) fabrication of false evidence; (5) conspiracy; and (6) failure to implement appropriate policies, customs and practices; and failure to train. (Compl., ECF No. 1.)

1

**I. Legal Standard**

The movant for summary judgment must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)). If the burden shifts to the nonmovant, the nonmovant "cannot 'rest upon. . . mere allegations' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" Tucker ex rel. v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2003) (citing Anderson, 477 U.S. at 248) (alterations in original).

Further, Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

2

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmovant's] behalf.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

## II. FACTUAL BACKGROUND[1]

The following facts are uncontroverted in the summary judgment record. On January 21, 2011, Plaintiff approached off-duty correctional officer Pina at a Raley's grocery store in South Lake Tahoe. (Dep. Patrick Solomon ("Solomon Dep. Tr.") 22:14-17, ECF Nos. 43-2 & 45-1; Dep. Brandon Pina ("Pina Dep. Tr.") 39:2-3, ECF Nos. 43-3 & 45-2.) Plaintiff knew from prior incarcerations that Pina was a correctional officer. (Pl. Resp. Undisp. Facts 2:3-6, ECF No. 46.)

Plaintiff made physical contact with a portion of Pina's body from behind. (Solomon Dep. Tr. 22:14-17, 25:14-17; Pina Dep. Tr. 39:2-3; Pina Trial Tr. 6:12-18, ECF No. 45-3.)

---

[1] Plaintiff contends a number of Defendants' statements of undisputed facts are "disputed." However, except as discussed below, Plaintiff has not supported these contentions with facts controverting the referenced evidence.

3

Pina subsequently phoned the South Lake Tahoe Police Department and told the police dispatch, "Hey, this is. . . Officer Pina from the jail. I'm over at. . . the Raley's [grocery store]. . . I just had an inmate, Patrick Solomon, come up and start pushing me. I was wondering maybe you could send a car over." (9-1-1 Recording ("911 Tr.") 1:3-7, ECF No. 45-4; Pina Dep. Tr. 40:22-25, 41:10-42:2; Pina Trial Tr. 41:15-17.) The dispatcher then spoke with Herminghaus, an officer with the City of South Lake Tahoe Police Department, and told him, in pertinent part, "RP works at the jail and an ex-inmate came up and started pushing him." (Police Dispatch Recording ("Dispatch Tr.") 1:2-4, ECF No. 45-6.) Dispatch also provided Herminghaus a description of the suspect: "It's Patrick Solomon. . . WMA, gray hair wearing a green long-sleeved shirt and . . . black pants and he went back inside the store." (Dispatch Tr. 1:6-8.)

After arriving at the Raley's grocery store, Herminghaus spoke with Pina. (Dep. Jake Herminghaus ("Herminghaus Dep. Tr.") 11:12-15, 15:2-4, ECF Nos. 43-4 & 45-5; Pina Dep. Tr. 63:12-64:23.) Pina identified Plaintiff to Herminghaus and then Herminghaus told Plaintiff he was under arrest. (Solomon Dep. Tr. 32:4-9; Pina Dep. Tr. 71:1-15; 73:14-16; Herminghaus Dep. Tr. 31:18-22.) When Herminghaus approached Plaintiff, Plaintiff was standing in one of the grocery aisles wearing a long-sleeved green shirt and black pants. (DVD Videos of Incident ("Video 2") 15:51:10.20, ECF No. 43-5[2].)

---

[2] Defendants submitted three Windows Media Player files containing video of the incident as Exhibit 5, ECF No. 45-3: Vpd_RALEYS127-4_MM_2011_01_21_23_41_03 ("Video 1"), Vpd_RALEYS127-1_MM_2011_01_21_23_50_55 ("Video 2"), and Vpd_RALEYS127-1_MM_2011_01_21_23_51_01 ("Video 3.")

4

While Herminghaus was placing Plaintiff under arrest, Plaintiff turned toward Herminghaus. (Solomon Dep. Tr. 35:5-9; Video 2 15:51:16.87-15:51:42.24.) Herminghaus applied force to Plaintiff's backside and Plaintiff came into contact with store shelving, hitting shelving on both sides of the aisle. (Solomon Dep. Tr. 41:1-2; 41:23-25-42:1; 42:16-22; Pina Trial Tr. 21:10-24; Herminghaus Dep. Tr. 36:15-37:10; Video 2 15:51:42.24-15:51:49.44.) When Herminghaus was moving with Plaintiff towards a store exit, Herminghaus took Plaintiff to the ground, face down. (Solomon Dep. Tr. 56:5-10; Herminghaus Dep. Tr. 37:18-25; Video 3 15:51:53.66-15:52:20.89.)

Plaintiff was taken to the hospital where he received care for "2 lac[erations] to [the] forehead." (Solomon Emergency Room Records ("ER Records"), ECF No. 45-7.)

Subsequently, Herminghaus gave deposition testimony that to the best of his knowledge, no one at the South Lake Tahoe Police Department ever alleged he used excessive force in connection with the incident. (Herminghaus Dep. Tr. 45:8-12.) Herminghaus also testified that he is not aware of any internal investigation regarding the arrest "other than the reports that have been filed"; and he has not been disciplined for the incident. (Herminghaus Dep. Tr. 45:13-46:3.) Plaintiff was subsequently prosecuted and Herminghaus spoke to the prosecution and Pina regarding the grocery store incident. (Herminghaus Dep. Tr. 51:13-52:1.)

///
///
///

5

### III. DISCUSSION

**A.   Probable Cause**

Defendants seek summary judgment on Plaintiff's false arrest and malicious prosecution claims arguing that each is "premised on the fact that [Plaintiff] was later not found guilty of the original criminal charge," and "the Supreme Court has long held that an officer making an arrest based on probable cause shall not be liable even if it turns out that the individual is innocent." (Mot. 5:26-6:4.) Defendants contend since probable cause to arrest Plaintiff is an essential element of each of these claims and Plaintiff's arrest was justified by probable cause, their motion should be granted.

Plaintiff counters "[t]he amount of information obtained by Herminghaus prior to the arrest . . . [was] insufficient to establish probable cause for arrest," since "Plaintiff had no specific intent to commit a battery when he...touched Pina...." (Opp'n 10:28-11:2; 11:6-8.)

California defines criminal battery as the "willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242. The California Supreme Court recently held "'[i]t has long been established that the least touching may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark."' People v. Shockley, 58 Cal.4th 400, 404 (2013) (quoting 1 Witkin & Epstein, Cal. Crim. Law (4th ed. 2012) Crimes Against the Person, § 13, p. 804).

When determining whether an officer has probable cause

to make an arrest for battery, the issue is whether the "facts and circumstances within the officer's knowledge . . . [were] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect . . . committed. . . an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). When making this probable cause determination, "[i]t is essential to avoid hindsight analysis, i.e., to consider additional facts that became known only after the arrest was made." John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2007).

> Because probable cause must be evaluated from the perspective of 'prudent [people]', not legal technicians,' an officer need not have probable cause for every element of the offense. However, when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred.

Blankenhorn, 485 F.3d at 472 (quoting Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994)). The California Supreme Court had stated battery "requires general criminal intent." People v. Sargent, 19 Cal. 4th 1206, 1220 (1999).

Plaintiff has not controverted Defendants' evidence evincing that Herminghaus had probable cause to arrest Plaintiff for battery. The evidentiary record shows Herminghaus went to the grocery store after receiving information from dispatch that "[Pina] works at the jail and an ex-inmate came up and started pushing him." (Dispatch Tr. 1:2-3.) Herminghaus spoke to Pina and Pina identified Plaintiff. (Herminghaus Dep. Tr. 18:16-18, 31:18-22; Pina Dep. Tr. 71:1-15.) Plaintiff also visually matched the description of the suspect that dispatch gave Herminghaus.

7

(Dispatch Tr. 1:6-8; Video 2 15:51:10.47.) Since pushing is use of unlawful force, Herminghaus had probable cause to arrest Plaintiff for criminal battery.

Lack of probable cause is an essential element of false arrest and malicious prosecution. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his [42 U.S.C.] § 1983 claim for false arrest. . . [the plaintiff] would have to demonstrate that there was no probable cause to arrest him."); Lacey v. Maricopa Cnty, 693 F.3d 896, 919 (9th Cir. 2012) ("To claim malicious prosecution, a petitioner must allege 'that the defendants prosecuted [him]. . . without probable cause...'"). Therefore, each Defendant's motion for summary judgment on Plaintiff's false arrest and malicious prosecution claims is granted.

**B.   Fabrication of False Evidence and Conspiracy Claims**

Defendants seek summary judgment on Plaintiff's fabrication of false evidence and conspiracy claims arguing the record is devoid of evidence supporting these claims. A fabrication of false evidence claim requires Plaintiff to "point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Constanich v. Dep't of Social and Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010) (citing Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)).

8

There is no evidence in the summary judgment record from which a reasonable inference could be drawn that the investigation into the alleged battery continued despite the fact that officers knew or should have known the Plaintiff was innocent or that any officer used coercive and abusive investigative techniques.

Further, a conspiracy claim requires evidence of agreement. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010) (indicating a plaintiff is required to establish a conspiracy claim with evidence of an express or implied agreement). Plaintiff contends "[d]iscovery brought to light several disputed facts that Plaintiff's arrest and prosecution were based on fabricated evidence and conspiracy to pursue prosecution." (Opp'n 11:21-24.) However, Plaintiff's conclusory argument is not supported by sufficient factual evidence of an agreement. T.W. Elec. Serv., Inc., 809 F.2d at 630 (finding that when the movant satisfies its summary judgment burden, the nonmoving party must set forth specific facts showing a genuine issue for trial to prevent summary judgment). Therefore, each Defendant's motion for summary judgment on Plaintiff's fabrication of false evidence and conspiracy claims is granted.

**C.  City Liability**

The City seeks summary judgment on Plaintiff's claim in which Plaintiff alleges: the City failed to implement appropriate policies, customs and practices concerning the excessive force he experienced; ratified that use of excessive force; and, failed to adequately train and supervise Officer Herminghaus so that he would not have inflicted that excessive force. The City argues

9

1  "discovery has revealed zero evidence to support" these claims.
2  (Mot. 14:14-19.)
3       Plaintiff counters the City "failed to follow its own
4  policy [of] investigat[ing] the use of force, [and that failure]
5  result[ed] in [Plaintiff's] physical injury;" and since
6  Herminghaus was never disciplined in connection with the arrest,
7  "[t]he City of South Lake Tahoe Police Department ratified and
8  affirmed as appropriate, the amount of force that Herminghaus
9  used . . . [against] Plaintiff." (Opp'n 18:7-12.)
10      Plaintiff may establish that the City is liable for the
11 excessive force to which he claims he was subjected by presenting
12 evidence that the alleged "constitutional violation [was]
13 pursuant to a formal governmental policy" or by proving that "a[]
14 [City] official with final policymaking authority ratified
15 [Herminghaus's alleged] unconstitutional...action and the basis
16 for it." Gillette v. Delmore, 972 F.2d 1342, 1346-47 (9th Cir.
17 1992). Plaintiff may establish that the City is liable for his
18 failure to train claim by demonstrating that the City's training
19 of its officers was deliberately indifferent to Plaintiff's right
20 not to be subjected to excessive force. Flores v. Cnty. of Los
21 Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014).

22           **1.  City Policy**

23      The City policy that Plaintiff argues supports his
24 claim states in pertinent part: "When a supervisor is able to
25 respond to an incident in which there has been a reported
26 application of force, the supervisor is expected to" perform
27 certain duties. (Decl. Susan M. Leeder, Ex. 9, ECF No. 45-9)
28 (emphasis added). However, no evidence has been presented from

10

which a reasonable inference could be drawn that a police department supervisor was able to respond to an incident of reported excessive force, or otherwise violated the policy.

### 2.   Ratification

Nor has evidence been presented from which a reasonable inference could be drawn that the City "ratified as appropriate" Herminghaus' actions. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.' " Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). "Ratification . . . generally requires more than acquiescence." Sheehan v. City and Cnty. of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014).

### 3.   Deliberate Indifference

Plaintiff has also failed to present facts from which a reasonable inference could be drawn that the inadequacy of Herminghaus' training amounted to deliberate indifference to Plaintiff's right not to be subjected to excessive force. "[A]bsent evidence of a 'program-wide inadequacy in training,' any [asserted] shortfall in a single officer's training" is insufficient to demonstrate deliberate indifference. Blankenhorn v. City of Orange, 485 F.3d 463, 484-85 (9th Cir. 2007) (citing Alexander v. City and Cnty. of San Francisco, 29 F.2d 1355, 1367 (9th Cir. 1994)).

For the stated reasons, the City Defendants' summary judgment motions are granted.

///

///

### D. Qualified Immunity

Herminghaus argues his qualified immunity defense shields him from liability for Plaintiff's excessive force claim, since he used objectively reasonable force to arrest and control and uncooperative arrestee. (Mot. 10:18-21.) "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009).

However, genuine issues of disputed material fact exist as to the amount of force Herminghaus used and the circumstances in which that force was applied, which prevents the conclusion that, as a matter of law, the force Herminghaus applied was objectively reasonable. Therefore, Herminghaus' summary judgment motion based on his qualified immunity defense concerning Plaintiff's excessive force is denied.

## IV. CONCLUSION

For the reasons stated, the City Defendants prevail on their motions and Herminghaus' motion for summary judgment is GRANTED in part and DENIED in part.

Dated: November 14, 2014

GARLAND E. BURRELL, JR.
Senior United States District Judge

12